**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ORANGEBURG DIVISION**
**CASE NUMBER:** 5:26-2682-SAC

| | |
|---|---|
| Nationwide General Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Anthony Johnson and Katina Brown-Barran, individually and as Personal Representative of the Estate of Joshua Brown,<br><br>Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT**<br>**(Non-Jury)** |

Plaintiff Nationwide General Insurance Company (hereinafter "Nationwide") seeks declaratory relief to determine the rights of the parties, and alleges and shows as follows:

## JURISDICTION & VENUE

1.      Nationwide is an insurance company organized and existing under the laws of the State of Ohio with its principal place of business in the State of Ohio and is authorized to conduct business in South Carolina.

2.      Upon information and belief, Defendant Anthony Johnson is a citizen and resident of Orangeburg County, South Carolina.

3.      Upon information and belief Defendant Katina Brown-Barran is a citizen and resident of Colleton County, South Carolina, and is the lawfully appointed personal representative of the Estate of Joshua Brown.

4.      This action is brought under the provisions of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*. and Rule 57, Fed. R. Civ. P.; there is a real and justiciable controversy between the parties, and by these proceedings Plaintiff asks this Court to inquire into and declare the rights and obligations of the parties hereto arising out of the facts set forth below.

1

5. The amount in controversy exceeds Seventy-Five Thousand and No/100 ($75,000.00) Dollars, exclusive of interests and costs, and there is complete diversity of citizenship; therefore, this Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1332(a)(1).

6. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2) because one or more Defendants reside in this District and Division and a substantial part of the events or omissions giving rise to this claim occurred in this District and Division.

## FACTUAL ALLEGATIONS

7. Nationwide issued a homeowners policy, Policy No. 61 39 HR 052978, to Anthony Johnson effective from February 9, 2024 through February 9, 2025 (the "Policy") listing a Residence Premises of 408 Catamount Road, Holly Hill, SC 29059-8653. The Policy includes Coverage E – Personal Liability Coverage with a limit of $300,000 for each occurrence for property damage and bodily injury. The Policy also includes Coverage F – Medical Payments To Others with a $3,000 each person limit. A copy of the Policy is attached hereto as Exhibit A.

8. The Policy provides in pertinent part:

**DEFINITIONS**

\*\*\*

**5.** "Business" means:

    **a.** A trade, profession or occupation, including self-employment, engaged in on a full-time, part-time or occasional basis; or

    **b.** Any other activity engaged in for money or other compensation, except the following:

        **(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total gross compensation for the 12 months before the beginning of the policy period;

2

**(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

**(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

**(4)** The rendering of home day care services to a relative of an "insured".

***

## SECTION II – LIABILITY COVERAGES

### A.  Coverage E – Personal Liability

If a claim is made or a suit is brought against an 'insured' for damages due to an 'occurrence' resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property, we will:

1.  Pay up to our limit of liability for the damages for which an 'insured' is legally liable. Damages include prejudgment interest awarded against an "Insured"; and

2.  Provide a defense at our expense by counsel of our choice. . .

### B.  Coverage F – Medical Payments To Others

We will pay the reasonable and necessary medical and funeral expenses that are incurred within three years from the date of an accident causing "bodily injury". This coverage does not apply to you or regular residents of your household except "residence employees".

As to others, this coverage applies only:

1.  To a person on the "insured location" with the permission of an "Insured"; or
2.  To a person off the "insured location", if the "bodily injury":
    a.  Arises out of a condition on the "insured location";
    b.  Is caused by the activities of an "Insured";
    c.  Is caused by a "residence employee" in the course of the "residence employee's" employment by an "Insured"; or
    d.  Is caused by an animal owned by or in the care, custody or control of an "Insured".

3

**SECTION II – EXCLUSIONS**

\*\*\*

**E. Coverage E — Personal Liability And Coverage F — Medical Payments To Others**

Coverages **E** and **F** do not apply to the following:

\*\*\*

**2. Criminal Acts**

"Bodily injury" or "property damage" caused by or resulting from an act or omission that is criminal in nature and committed by an "insured". This exclusion applies regardless of whether the "insured" is actually charged with or convicted of a crime;

**3. "Business"**

**a.** "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.3.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

**b.** This Exclusion **E.3.** does not apply to:

**(1)** The rental or holding for rental of an "insured location";

**(a)** On an occasional basis if used only as a residence;

**(b)** In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

**(c)** In part, as an office, school, studio or private garage; and

**(2)** An "insured" under the age of 21 years involved in a

4

part-time or occasional, self-employed "business" with no employees;

\*\*\*

**F. Coverage E – Personal Liability**

Coverage **E** does not apply to:

\*\*\*

**7.** Liability for any of the following:

**a.** Judgments;

**b.** Costs;

**c.** Attorneys fees; or

**d.** Claims;

against an "Insured" for punitive or exemplary damages. Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages. In addition, coverage does not apply for restitution, if the result of a criminal court order.

\*\*\*

**SECTION II – CONDITIONS**

\*\*\*

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if the person seeking coverage fails to comply with the following duties. You will help us by seeing that these duties are performed:

**1.** Give notice to us or our agent as soon as is practical, which sets forth:

**a.** The identity of the policy and the named insured shown in the Declarations;

5

    **b.** The time, place and circumstances of the "occurrence"; and

    **c.** Names and addresses of any claimants and witnesses;

**2.** Cooperate with us in the investigation, settlement or defense of any claim or suit;

**3.** Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

***

11. On or about February 17, 2026, Katina Brown-Barran filed a Summons and Complaint in the South Carolina Court of Common Pleas, Orangeburg County, captioned <u>Katina Brown-Barran, individually and as personal representative of the Estate of Joshua Brown v. Demetrius Dickerson, Anthony Johnson, and MINNIES</u> (hereinafter, the "Underlying Complaint"). A copy of the Underlying Complaint is attached as Exhibit B.

12. The Underlying Complaint alleges that on or about February 18, 2024, Joshua Brown ("Brown") attended a party hosted at club "MINNIES," alleged to be located at 180 Brightwater Drive and/or 408 Catamount Road, Holly Hill, South Carolina.

13. The Underlying Complaint alleges that MINNIES was operating illegally as "nightclub and/or bar operating in Orangeburg County, South Carolina, at 408 Catamount Rd., Holly Hill, South Carolina 29059, and/or 408 Catamount Road, Holly Hill, South Carolina 29059."

14. The Underlying Complaint alleges that Johnson and MINNIES "knowingly permitted large gatherings and the consumption of alcohol on the premises without adequate security or supervision" and that "alcohol was freely provided and/or served to patrons at the event while supplies were emptied, without regard to intoxication levels or public safety."

15. The Underlying Complaint alleges that Anthony Johnson and MINNIES owned the premises.

6

16. The Underlying Complaint alleges that while Brown was a patron on the premises, Demetrius Dickerson ("Dickerson") physically attacked Brown, initiating a violent altercation involving multiple individuals.

17. The Underlying Complaint alleges that during the assault, Dickerson pulled a firearm from his waistband and shot John, fatally wounding him.

18. The Underlying Complaint asserts causes of action for Premises Liability; Negligence, Gross Negligence, Reckless or Wanton Conduct; Dram Shop Liability; and Wrongful Death, and asserts claims against Dickerson arising from the shooting.

19. As to premises liability, the Underlying Complaint alleges Brown was a "business invitee" of Johnson and Minnies, "lawfully on the premises of their establishment for business reasons" and that Johnson and Minnies breached duties owed to Brown, including, among other allegations:

    a. In negligently failing to inspect or adequately inspect or be aware of the unreasonably dangerous condition that existed, including failing to take affirmative action to ensure its business invitees are free from unreasonable harm;

    b. In negligently failing to inspect or adequately inspect or be aware of the unreasonably dangerous condition that existed, including not training its employees, such as security, to take affirmative action in making sure its business invitees can safely patronize the business, including [Brown], thereby creating a hazardous condition to members of the public, including [Brown];

    c. In negligently failing to correct or adequately correct the unreasonably dangerous condition, thereby creating an unreasonably dangerous condition for business invitees, including [Brown];

    d. In negligently failing to warn business invitees of the unreasonably dangerous condition that existed, thus creating a hazardous condition to members of the public, and thus creating an unreasonably dangerous condition for [Brown];

e. In negligently failing to train and/or adequately training its employees to protect the health and safety of business invitees of the defendant, including [Brown], herein;

f. In failing to have sufficient corporate policies and/or in failing to follow its own corporate policy(ies) regarding the safety of business invitees, including [Brown];

20. As to negligence cause of action, the Underlying Complaint alleges Johnson and Minnies, breached duties owed to Brown, including, among other allegations:

a. In failing to adequately staff its premises to ensure the safety and security of its business invitees;

b. In failing to adequately train its employees, agents, volunteers, officers, directors, or other persons acting on Defendants' behalf to recognize the danger posed by the other patrons who initiated the assault which ultimately resulted in the death of [Brown];

c. In failing to adequately train its employees, agents, volunteers, officers, directors, or other persons acting on … to recognize the dangers of serving intoxicating liquors to persons who were likely to, and who did, initiate the assault which ultimately resulted in the death of [Brown];

d. In failing to provide adequate security, in the form of alcohol cut-offs, guards, "bouncers," law enforcement, first aid stations, clear exits, or other means and mechanisms necessary to ensure the safety of its invitees, including [Brown];

e. In failing to properly supervise its employees, agents, volunteers, officers, directors, or other persons acting on Defendants' behalf in the actions and circumstances described hereinabove;

f. In hiring persons unsuitable to staff its premises and for whom Defendants knew (or should have known) by the exercise of reasonable care were unable, unwilling, or unsuitable to provide for the safety and security of its invitees, including [Brown];

21. As to negligence cause of action, the Underlying Complaint alleges Johnson' and Minnies' "premises consisted of, *inter alia*, a bar at which intoxicating liquors were served on the night of the circumstance" giving rise to the Underlying Lawsuit and that their "bartenders, servers, agents, employees, volunteers, officers, directors, or other persons operating on" their behalf "served a patron or patrons liquor, alcohol, or other controlled substances" while those patrons were overly intoxicated.

8

22.     Upon information and belief, Dickerson was under the age of 21 at the time of the shooting.

23.     Upon information and belief, Johnson operated "MINNIES" as a club, including promoting events at the club and charging admission for events at the club.

24.     For example, upon information and belief, on December 3, 2023, Johnson posted a flyer on social media advertising a December 9, 2023 event at "MINNIE'S PLACE" located at "408 Catamount Road, Holly Hill, SC 29059" with a listed admission price of $10 with "Free Drinks 10pm-11pm". This flyer is attached hereto as Exhibit C.

25.     Upon information and belief, on October 15, 2024, Johnson posted a flyer on social media advertising a "Halloween Bash" at "408 Catamount Road, Holly Hill, SC 29059" charging $25 for admission. This flyer is attached hereto as Exhibit D.

26.     Upon information and belief, on October 23, 2023, Johnson posted a flyer on social media advertising a "Fright Night Friday Boo Bash" presented by "MINNIE'S" listing admission costs of $7 to $10. This flyer is attached hereto as Exhibit E.

27.     Upon information and belief, various other social media flyers promote and advertise other events at "MINNIE'S PLACE" located at "408 Catamount Road, Holly Hill, SC 29059", such as "Thirsty Thursdays", Hookah Paint & Sips, Too Too Tuesdays, etc.

28.     These publicly available social media posts reflect the operation of "MINNIE'S" or "MINNIE'S PLACE", for profit over multiple years.

29.     Johnson has tendered the Underlying Lawsuit to Nationwide for a defense and is seeking coverage from Nationwide for the claims asserted in the Underlying Complaint.

30.     Nationwide is currently defending Johnson in the Underlying Lawsuit under a reservation of rights.

31.     There is an actual, present controversy between Nationwide and Johnson regarding Nationwide's duties to defend and indemnify under the Policy with respect to claims arising from the incident alleged in the Underlying Complaint.

## FOR A FIRST DECLARATION
### (Business Exclusion)

32.     Nationwide repeats and re-alleges the paragraphs set out above as if set forth fully verbatim below.

33.     The Policy contains an exclusion "'bodily injury' or 'property damage' arising out of or in connection with a 'business' conducted from an 'insured location' or engaged in by an 'insured', whether or not the 'business' is owned or operated by an 'insured' or employes an 'insured'."

34.     The Policy defines "business" to mean "a trade, profession or occupation, including self-employment, engaged in on a full-time, part-time or occasional basis; or … [a]ny other activity engaged in for money or other compensation," subject to certain inapplicable exceptions.

35.     As set forth above in Paragraphs 19-20, the Underlying Complaint alleges various duties owed to Brown and breached by Johnson and Minnies that arise out of a "business invitee" relationship in connection with the operation of Minnies as a business.

36.     The Underlying Complaint also alleges a dram shop liability cause of action, which is a cause of action recognized against businesses that sell alcohol.

37.     Upon information and belief, Johnson operated a for-profit business at the property, which was referred to as "MINNIES", "MINNIE'S PLACE", or other titles.

38.     Upon information and belief, Johnson promoted the business by publishing advertisements for events at the premises, including through social media.

39.     Upon information and belief, Johnson charged admission and/or door charges were collected in connection with those events.

40.     Upon information and belief, Johnson sold food and/or beverages at the premises.

41.     Upon information and belief, Johnson developed portions of the property to configure, improve, or otherwise make the property more suitable for his business purposes.

42.     Upon information and belief, Johnson's operation of Minnies and/or the conduct alleged in the Underlying Complaint constitutes a trade, profession, or occupation engaged in on a full-time, part time, or occasional basis.

43.     Upon information and belief, Johnson's operation of Minnies and/or the conduct alleged in the Underlying Complaint constitutes an "activity engaged in for money or other compensation."

44.     Upon information and belief, the injuries alleged in the Underlying Lawsuit arise out of, or in connection with, a "business" conducted from an "insured location" or engaged in by Johnson or another insured under the Policy.

45.     As a result, Nationwide is entitled to a declaration that it owes no duty to defend Johnson in the Underlying Lawsuit and no duty to indemnify Johnson for any judgment, award, or settlement arising from the claims asserted therein.

### FOR A SECOND DECLARATION
### (Criminal Acts Exclusion—Unlicensed Alcohol Operation)

46.     Nationwide repeats and re-alleges paragraphs above as if set forth fully verbatim below.

47.     The Policy's Criminal Acts exclusion excludes coverage for "'bodily injury' or 'property damage' caused by or resulting from an act or omission that is criminal in nature and

11

committed by an 'insured'." The exclusion applies "regardless of whether the 'insured' is actually charged with or convicted of a crime."

48. The Underlying Complaint alleges that Johnson owned, operated, managed, controlled, and/or allowed operation of an "illegal nightclub and/or bar" known as "MINNIES" at or associated with the insured premises, that alcohol was served to patrons there, and that Brown was fatally shot during an altercation on the premises.

49. South Carolina law regulates the sale and service of alcoholic beverages and requires appropriate permits and licensure for on-premises alcohol sales and service. *See, e.g.,* S.C. Code Ann. § 61-4-560 (prohibiting unlicensed retail sale of beer or wine); S.C. Code Ann. § 61-6-4010 (prohibiting unlawful sale or possession of liquor for unlawful use). Conduct that violates these statutes is criminal in nature.

50. Taking the Underlying Complaint's allegations as true for purposes of determining Nationwide's coverage obligations, the alleged operation of an "illegal nightclub and/or bar" and unlicensed and unpermitted sale of alcohol constitutes criminal conduct within the plain meaning of the Policy's Criminal Acts exclusion.

51. The Underlying Complaint alleges that Brown's injuries and damages were caused by or resulted from the illegal service of alcohol and the illegal operation of Minnie's.

52. Therefore, Nationwide is entitled to a declaration that it owes no duty to defend or indemnify Johnson for the claims asserted in the Underlying Lawsuit because coverage is barred by the Criminal Acts exclusion.

### FOR A THIRD DECLARATION
### (Criminal Acts Exclusion—Service to Intoxicated Persons and Minors)

53. Nationwide repeats and re-alleges paragraphs set out above as if set forth fully verbatim below.

54.     The Criminal Acts exclusion is independently implicated by additional criminal conduct of unlawful alcohol service as alleged in the Underlying Complaint.

55.     The Underlying Complaint alleges that alcohol was served at MINNIES to persons who were intoxicated. South Carolina law prohibits the sale of beer or wine to an intoxicated person. See S.C. Code Ann. § 61-4-580(A)(2).

56.     In addition, upon information and belief, Dickerson was under the age of twenty-one at the time of the incident. South Carolina law prohibits providing alcoholic beverages to persons under twenty-one. *See* S.C. Code Ann. § 61-6-4070(A); S.C. Code Ann. § 61-4-90(A).

57.     The alleged furnishing or making available of alcohol to underage persons and the alleged service of alcohol to intoxicated persons are criminal in nature under South Carolina law.

58.     The Underlying Complaint alleges that Brown's injuries and damages were caused by or resulted from the illegal service of alcohol.

59.     Therefore, Nationwide is entitled to a declaration that it owes no duty to defend or indemnify Johnson for the claims asserted in the Underlying Lawsuit because coverage is barred by the Criminal Acts exclusion.

## FOR A FOURTH DECLARATION
### (Punitive Damages)

60.     Nationwide repeats and re-alleges the paragraphs set out above as if set forth fully verbatim below.

61.     The Policy excludes coverage for "Liability for any of the following: a. Judgments; b. Costs; c. Attorney fees; or d. Claims; against an 'insured' for punitive or exemplary damages", including any "double, treble or other multiple damages in excess of compensatory damages."

62.     The Underlying Complaint seeks punitive damages.

13

63.     Therefore, Nationwide is entitled to declarations that the Policy does not provide coverage for punitive damages that may be awarded in the Underlying Lawsuit.

**WHEREFORE**, Nationwide respectfully requests that this Court inquire into these matters and declare that:

a)   The Nationwide Policy does not provide coverage for the claims and damages alleged in the Underlying Complaint;

b)   Nationwide has no obligation to defend Johnson or any other person or entity in connection with the claims asserted in the Underlying Complaint or any other claims relating to the incident described therein;

c)   Nationwide has no obligation to indemnify or otherwise perform under the Policy for any such claims,

together with such other and further relief as the Court may deem just and proper.

MURPHY & GRANTLAND, P.A.


s/Wesley B. Sawyer
Wesley B. Sawyer, Esq. (Fed. I.D. No.: 11244)
P.O. Box 6648
Columbia, South Carolina 29260
Phone: (803) 782-4100
wsawyer@murphygrantland.com
Attorney for Plaintiff Nationwide General
Insurance Company

Columbia, South Carolina
July 6, 2026

14